## JOSEPH TRENCH *et al.*, APPELLANTS, *v.* CHARLES L. STRONG *et als.*, RESPONDENTS.

SECOND REHEARING. Where an order refusing a new trial in a District Court of the Territory of Nevada was appealed to, and the order affirmed by, the Territorial Supreme Court, which also denied a petition for rehearing and issued a remittitur, and on appeal in the same case to the United States Supreme Court was dismissed, on the ground that such a judgment would not be reviewed by that Court, the mandate of which was filed in this as the successor of the Territorial Supreme Court: *Held,* that a petition for a rehearing of the appeal to the Territorial Supreme Court should not be entertained.

THE SAME. To sanction the practice of filing a second petition for rehearing would be mischievous and should not be permitted, except to correct a palpable error and grievous wrong.

"SIT FINIS LITIUM." It is better that an erroneous decision should stand than that none should be relied on as final.

FORM OF REMITTITUR. No peculiar form or nice technical exactness is required in a remittitur.

EVIDENCE OF AUTHORITY TO ISSUE REMITTITUR. The mere fact that a remittitur appears to have been issued before a decision refusing a petition for rehearing was filed, is not sufficient evidence that it was issued without authority.

Application for leave to file a petition for rehearing upon an appeal to the Territorial Supreme Court.

The cause was originally tried in the District Court of the First District of the Territory of Nevada, Storey County. It resulted in a verdict and judgment for defendants. A motion by plaintiffs for a new trial was overruled, and on appeal to the Supreme Court of the Territory that order was affirmed. A petition for rehearing was filed in that Court and denied; but the decision denying it was not filed until several days after the remittitur to the Court below had been issued.

Other facts and proceedings are stated in the opinion.

*Williams and Bixler*, for Appellants and Applicants, contended that the Court has the power to grant this motion; and having the power, it should exercise it in the manner requested. It has the power, because it has succeeded the Territorial Court to the extent of being able to exercise all jurisdiction which that Court could exercise were it still in existence, or could have exercised at the time it ceased to exist; and that Court could have exercised the jurisdiction. (*Hastings* v. *Johnson*, 2 Nev. 190; *Sparrow and Trench* v. *Strong et als.*, 3 Nev. —.)

•An application by " petition for rehearing" is simply a motion, which is governed by the rules applicable to all other usual and ordinary motions. The granting or refusing of the motion is an order. If the order is not final, or in other words if by the rules of law it is not *res judicata*, the motion may be renewed. It may be renewed upon the same papers; but Courts will be more reluctant to grant leave to renew, when the application is based upon the papers previously used, than when new evidence is proposed. (*Smith* v. *Spalding*, 3 Howard Pr. R. 340; *White* v. *Monroe*, 33 Barb. S. P. 61–653; *Dolfus* v. *Frosch*, 5 Hill, 493; *Mitchell* v. *Allen*, 12 Wend. 290, and *Bellinger* v. *Martindale*, 8 Howard's Pr. R. 113.)

This Court being the successor of the late Territorial Supreme Court as to cases similar to this, (U. S. Statutes at Large, vol. 13, p. 44,) has received the *mandate* of the Supreme Court, provided for in the Act cited, and is directed to take such further action as justice dictates. The ends of justice demand an examination of this case upon its merits, and with a determination that the right shall prevail.

In the case of *Runkle; Lichenstien et al.* v. *Gaylord,* this Court entertained a petition for rehearing in a cause previously decided by the Territorial Supreme Court.

Under the mandate of the Supreme Court further proceedings must be had here. This Court ought either to enforce the former judgment, or else render another. It cannot act intelligently in the premises without an examination of the case, and the most satisfactory process, both to the parties and the Court, will be to open

the case, and have a free full hearing upon the merits.   No legal injury can be done by that course.

*C. J. Hillyer,* for Respondents.

1. The proposition that this Court is the successor of the Territorial Court, and may do in reference · to this case whatever its predecessor might have done had its existence continued to the present time, is not disputed.

2. The power of this Court to grant this motion is denied.   A petition for rehearing having been made and denied in 1863, and a remittitur having been duly issued and filed in the Court below, this Court lost thereby its jurisdiction of the case.   (*Rowland* v. *Kreyenhagen,* 24 Cal. 52 ; *Martin* v. *Wilson,* 1 Comstock, 240 ; *Delaplaine* v. *Bergen,* 7 Hill, 591 ; *Browder* v. *McArthur,* 7 Wheaton, 58.)

Even had no remittitur issued, the Court could not have reviewed their order denying a rehearing, unless some motion to that effect had been made before the lapse of the term at which the motion was refused.   (*De Castro* v. *Richardson,* 25 Cal. 50, and cases there cited ; *Killip* v. *Empire Co.,* 2 Nev. 34.)

The authorities cited by plaintiff's counsel are not applicable to the case at bar.   A petition for rehearing cannot be classed with motions of the character referred to in these cases.   If it be called a motion, it is a motion to *vacate a judgment.*   To say that this motion may be renewed at discretion, is to deny that a *judgment* ever becomes *res judicata.*   The argument would lead to the absurd conclusion that each of the former judgments of this Court, in cases where a petition for rehearing has been filed, is still open to review and reversal by the indirect means of a motion to renew the motion for rehearing.

3. The reasons given why the Court should take this unprecedented action are novel :

1st. It is said the mandate of the Supreme Court of the United States requires that some action should be taken.   The mandate is in the usual form.   It advises this Court that the writ of error was *dismissed* for the reason that the appellate Court *had no jurisdiction* of the appeal.   It is plain that, the Supreme Court never

having·had jurisdiction of the appeal, the case stands and must be treated in this Court precisely as if no appeal had ever been attempted.

2d. It is said that no *legal injury* can be done by a re-examination, because, if the former judgment is right, it will stand, and if wrong, it ought not to stand. This view of the subject is most refreshing, and to a lawyer decidedly captivating. It opens up a new and limitless field of operations. The inconvenience of waiting for new clients can be obviated by wiping the dust from his preserved records of former encounters, and thence renewing the old ones. If by chance he finds nothing to be dissatisfied with in his own files, a careful search through the volumes of reports in his library cannot fail of satisfying his taste for criticism and his ambition for business. The labor of search even may be spared, for in the table of *overruled cases* he will find abundant material ready prepared for use.

*Williams and Bixler*, for Appellants, in reply:

1. It is claimed that the lapse of the term at which the motion for rehearing was denied, precludes the granting of this motion. The cases cited, which it is claimed sustain the proposition, only cited that a motion to amend a record of a Court will not be entertained after the adjournment of the term at which the record was made, unless the amendment can be made from the record itself. If the proposition were correct, then applications for rehearing, in cases where the judgments are rendered upon the last day of the term, could not be entertained, unless the precaution should be observed of making an order allowing them. There is no rule of Court fixing the time within which such applications shall be made, but as the issuance of a remittitur is forbidden until after the expiration of ten days, it is doubtless intended that motions for rehearing must·be filed within that time. The issuance of the remittitur alone fixes the period at which the right to file a petition for rehearing ceases. (Opinions of Cabell and Brooke, JJ., in *Towner* v. *Lane's Admin.*, 9 Leigh (Virginia) 284; 4 Smedes and Marshall, 730; *Rowland* v. *Kreyenhagen*, 24 Cal. p. 52); in *Land* v. *Wickham*, (1 Paige Ch. R. 256), these motions for rehearing were entertained.

2. It is admitted that the issuance, properly, of a remittitur from the Court of last resort, ousts it of further jurisdiction of the cause, and precludes it from taking further action; but the document issued was not a remittitur; and if it had been, it was improperly issued, and would be disregarded, or if necessary, recalled. The document termed a remittitur, was simply a certificate copy of the judgment of the Supreme Court. "Remittitur" is a technical term; it means something more than a simple copy of the judgment certified to be correct. (*Brown* v. *Clark*, 3 John. 443; 3 Bacon's Ab. title Error, 34, 35; 2 Tidd's Practice, title Error, 1219, 1245.)

The paper presented by respondents as a remittitur, is not a technical remittitur, nor is it the certificate mentioned in the statute of the Territorial Legislature relating to the subject. (Statute of 1861, 365, 415.)

Again: The Territorial Supreme Court being an intermediate appellate Court, cannot issue its remittitur to the Court below, until the time for appealing from its judgment has expired. This must be the case if the original record is—in contemplation of law—transmitted from one Court to the other; because, if the intermediate Court may return the record to the Court from whence it came, then it may place it beyond its power to comply with a writ of error from the Court of last resort, requiring it to transmit the record to that Court. In this cause the amount in controversy authorized a writ of error to the U. S. Supreme Court, but at the time the writ was sued out there was—according to the theory of the other side—no record in the Territorial Supreme Court to transmit, the Clerk having previously disposed of it by a return to the District Court for Storey County.

Again: The Clerk of the Territorial Supreme Court issued the so-called remittitur, at a time when a motion for rehearing was pending in that Court. His act in doing so was irregular, if not absolutely void, and should be disregarded. (*Grogan* v. *Kuckle*, 1 Cal. 193; *Mateer* v. *Brown*, ibid, 231; *Rowland* v. *Kreyenhagen*, 24 Cal. 52, and cases there cited; *Newton* v. *Harris*, 8 Barb. 310; *Legg et al.* v. *Overbaugh et al.*, 4 Wendall, 188.)

By the Court, LEWIS, J.

This action was brought in the year 1863, to recover a portion of the mining ground now occupied by the Yellow Jacket Company, tried in that year, and a verdict rendered in favor of the defendants ; a motion for a new trial was duly made, overruled, and an appeal taken to the Supreme Court of the Territory, and by it the order below was affirmed.   From that judgment, affirming the order of the lower Court, the appellants took an appeal to the Supreme Court of the United States.   But that Court dismissed the appeal upon the ground that an appeal from the judgment of the Territorial Supreme Court affirming an order refusing a new trial could not be reviewed by it.   The remittitur is sent to this Court as the successor of the Territorial Supreme Court, and now, as it is claimed that this Court has jurisdiction of the case, counsel for appellant asks permission to file a petition for rehearing, upon the appeal to the Territorial Supreme Court.

This proceeding is certainly a very unusual one, although perhaps not entirely without precedent.   We have, however, concluded that it would be mischievous in the extreme to sanction the practice of filing a second petition for rehearing in any cause whatever, at least that it should not be permitted except to correct a palpable error and grievous wrong ; and that too only when the Judges allowing it are entirely familiar with the case and the decision which they are asked to reconsider.   The present Judges of this Court know nothing of the merits of this action, nor of the grounds upon which the Territorial Supreme Court based its judgment.   It would be unsatisfactory, to say the least, to grant a re-argument upon what might now be learned from the incomplete and imperfect records which were then kept of the proceedings of the Court.   It is possible that some matter may have been presented to the consideration of that tribunal which the record here does not disclose, about which the present Court knows nothing, and which may have been fully sufficient to warrant the decision.   This consideration alone weighs heavily against the appellants in this application.

It is better that an erroneous decision should stand than that none should be relied on as final.   When a cause has been taken to the tribunal of last resort, and there disposed of, the person in

Trench *v.* Strong.

whose favor the decision is rendered very naturally relies upon it as final, unless such decree directs further proceedings.    When the ordinary rules of procedure justify the conclusion that a decision is final, property is then acquired and disposed of upon that assumption, and the individuals immediately interested shape their actions accordingly, and the people generally accept it as the law which is to govern them in similar cases.    Immediate mischief will usually flow from disturbing such decisions, and a feeling of uncertainty in the finality of all legal proceedings would very naturally pervade the community.    Admitting the legal right of this Court to open up the decision of the Territorial Court, still the facts in the case would make the exercise of such right extremely improper, and perhaps result in injustice and hardship to many who have become interested in the property in controversy, under a reasonable belief that the decision of the Territorial Supreme Court was final; for we find that a remittitur was sent to the lower Court on the 24th day of July, A. D. 1863, and there filed.    True, it may possibly have been issued without authority, and before the petition for rehearing had been disposed of; however, as it was sent to the Court below, and there filed, as the remittitur in the cause, all persons examining the records had a right to believe that the final decision of the Territorial Supreme Court had been made, and that no appeal had been taken from it.    In such case, the most prudent person would hardly have extended his inquiries beyond the record in the Court below. Upon that record the defendants' interest in the property may have changed hands, improvements made and large sums of money expended, upon the assumption that the case was disposed of.    Under such circumstances, a case can hardly be imagined which would justify the granting of an application of this kind.    It is claimed, however, that the paper sent to the lower Court by the Clerk of the Territorial Supreme Court was not a remittitur.    Whether it was in proper form or not, there is no doubt but that it was intended as a remittitur.

It was indorsed, and doubtless treated as such by all parties. But we see no material or serious objection to the form or substance of the remittitur.

It seems to embody everything which a remittitur should usually

Trench *v.* Strong.

contain; the statement that the cause had been argued, taken under consideration by the Court, that the opinion of the Court was delivered affirming the judgment of the lower Court, and then closing in this manner:

" Whereupon it is now considered, ordered, adjudged, and decreed by the Court here, that the judgment of the Court of the First Judicial District in and for Storey County, in the above entitled cause, be and the same is hereby affirmed, with costs." No peculiar form or nice technical exactness is required in a remittitur. Its principal object is to fully notify the lower Court of the judgment of the appellate tribunal. That is done by the remittitur in this case.

It is also argued that the remittitur should have no effect because improperly issued. But what evidence has this Court that the Clerk was not fully authorized to issue it when he did? Simply this: it appears by the file marks that the remittitur was sent to the Court below on the 24th day of July, and that the petition for rehearing was not disposed of until the 1st day of August.

The judges may nevertheless have concluded to refuse the rehearing long before their decision to that effect was filed; and themselves ordered the issuance of the remittitur. There appears nothing to indicate that it was issued without authority, except the fact that the remittitur bears a date six or seven days anterior to the time when the decision upon the petition for rehearing seems to have been filed. That alone is not sufficient, under the circumstances of this case, to justify the conclusion that it was issued without authority.

In view of all the peculiar circumstances of this case, it is evidently the duty of this Court to let the judgment rest.

JOHNSON, J., having been consulted on the original suit, did not participate in this decision.